## SCHOLEY *v.* REW.

1. The "succession tax," imposed by the acts of June 30th, 1864, and July 13th, 1866, on every "devolution of title to any real estate," was not a "direct tax," within the meaning of the Constitution; but an "impost or excise," and was constitutional and valid.
2. A devise of an equitable interest in real estate, in which personal property had been invested by the trustee with the assent of the devisor, before the making of the will, was a devolution of real estate within the meaning of the acts of June 30th, 1864, and July 13th, 1866, and the devisee is liable to the succession tax imposed thereby, in respect of it, if he has received its value, although in proceedings for partition he has had assigned to him only personal property.
3. An alien to whom a devise of an interest in real estate has been made, and who has received its value in proceedings for partition, is estopped to set up against a demand for a succession tax thereon, that by the law of the State where the estate is, the devise is absolutely null and void.
4. *Quære.* Whether a general assignment of errors that the judgment below on a special case was for the wrong party, is sufficient.
5. *Semble.* That an objection that a devise is void because of the alienage of the devisee, cannot first be taken by him in this court on a writ of error to the judgment of a Circuit Court on a special case, although the record discloses the fact of alienage.

ERROR to the Circuit Court for the Northern District of New York, in which court Scholey, a British subject, sued Rew, collector of internal revenue, to recover the amount of a "succession tax" which Rew, as collector, had demanded of him, Scholey, and which—asserting it to be illegal—Scholey had paid only on compulsion and under protest.

The case was found specially, by the Circuit Court, on a waiver of a jury, under the act of March 3d, 1865, which authorizes such a finding by the court, and enacts that when

the finding is special the review by this court may extend to the sufficiency of the facts found to support the judgment. The case so found was thus:

Elwood, of Rochester, New York, died in 1863, leaving a widow and three minor children, and a large amount of personal property, besides certain real estate.

He left also a will, by which, after certain bequests of personal property, he directed that all the residue. of his estate, real and personal, should be divided by his executors between his wife and three children, according to the statutes of New York, as if he had died intestate; that is to say, as the Reporter supposes—though the language or effect of the statute was nowhere stated in the record or briefs—one-third to the wife and two-thirds between the children. And he appointed his wife and two friends, Mumford and Russel, executors of the will.

In May, 1864, Russel, as acting executor, presented to the Supreme Court of New York a petition, setting forth that the assets of the estate were about $500,000, chiefly invested in personal securities, but including a large amount of money uninvested; that it was deemed for the interest of the estate to invest a portion of the assets in productive real estate in Rochester; and asking authority to make the purchase of certain property described, in that city, for $73,000.

In pursuance of this prayer an order was made authorizing the executors to invest so much as should be necessary of the assets of the estate in the purchase of the real estate described; and " to purchase and to hold the same as such executors."

Under the authority of this order, the executors in May, 1864, took a conveyance of the premises to themselves as executors of Elwood's will, the survivor or survivors of them, their successors or assigns, for $72,602. These premises were thenceforth styled and spoken of as the " Elwood lot," and, after being improved, as the " Elwood block."

At the time of Elwood's death, he owned four parcels of real estate in Rochester, one of them a vacant lot on Mill Street, which parcels were altogether of the value of $50,000.

After the purchase of the Elwood lot the executors, by authority of the Supreme Court of New York, erected a building on the vacant lot on Mill Street, which cost $15,111, and also made improvements upon the Elwood lot at a cost of $49,006, which increased the value of the property at least to that amount. All these improvements were completed in the spring of 1868, and were paid for, as was also the purchase price of the Elwood lot, out of the personal property of Elwood's estate.

In October, 1867, Mrs. Elwood, the widow of Elwood, was married to Scholey, the plaintiff in the present case; and in September, 1869, she died, leaving a will. By her will, after five annuities during the lives of the five annuitants, amounting altogether to $4100, annually, certain specific legacies of personal property, and certain legacies of money, amounting to $6500, she gave all the residue of her property, real and personal, to her husband, the plaintiff, and appointed him with the above-named Mumford and one Worcester, executors.

In February, 1870, Mumford, as sole surviving executor of Elwood's will (Russel having died in 1866), instituted joint proceedings in the Supreme Court of New York against the three children of Elwood, against Scholey, Worcester, and Mumford, as coexecutors of Mrs. Scholey's will, and against Scholey individually as her husband and residuary legatee.

The complainant alleged that Mrs. Scholey acquired some interest in or title to the Elwood block, and the once vacant lot on Mill Street, by reason of the same having been bought and improved out of Elwood's personal estate, and that Scholey, by virtue of Mrs. Scholey's will, claimed some title to or interest in it. It prayed that Mumford's accounts, as sole surviving executor of Elwood, and Mrs. Scholey's as sole executrix, might be settled and adjudged final and conclusive, and that her executors might be required to render accounts in furtherance of that purpose, including an account of all rents or income of said real estate received by her; that an account might be taken of all Elwood's per-

sonal estate, and its value at the time of his death and at all times afterwards; that Mrs. Scholey's share in that personal estate at the time of her death and at the time of the accounting, and also " what right or title she had in and to the said real estate, bought or improved out of the personal estate of" Elwood, might be determined; that when such share or interest should be determined, it should be partitioned from the body of Elwood's estate; that the shares of the three children in their father's personal estate might be determined and partitioned off to them in severalty, and that thereafter the share of each child might be kept separate, to the end that such share, with its increase, might be paid to each respectively as he or she should become entitled to receive it.

Scholey answered, admitting the making of the various orders and the investment of the sums mentioned in the purchase and improvement of real estate; denied the binding character of the orders, but admitted the propriety of the investments in case the advantages thereof were to be equitably shared by the parties interested in the funds invested, in proportion to their respective interests. He admitted that no distribution of Elwood's personal estate had been made, and joined in the prayer for an accounting and distribution, praying further that upon Mrs. Scholey's share being ascertained, the same, or such part of it as should not be required to provide for the legacies given by her will, might be delivered to him as her residuary legatee.

The other defendants also answered, and the same was referred to three referees to try the issues; to take and state the several accounts mentioned in the complaint; to determine the extent and value of the interest in Elwood's personal estate, which Mrs. Scholey's executors, and her husband as her residuary legatee, were entitled to receive under her will; to determine the share of each of Elwood's children in his personal estate; to determine whether actual partition of his personal estate could be made between Mrs. Scholey's executors and Mumford as Elwood's surviving executor, and if so, to make such partition; and to deter-

mine whether Elwood's personal estate could be actually partitioned as between his three children, and if so to make such partition.

These referees reported on the 5th of November, 1870, among other things, as follows:

That Elwood's personal estate at his death amounted to $331,709, and at the date of the report to $492,374, which last sum included the building on the Mill Street lot, at $15,111 and the Elwood block at $135,000; and that the value of such personal estate subject to partition at the latter date, after deducting three specific bequests or charges in Elwood's will, was $467,402, which sum included the Elwood block and Mill Street building at the above valuation.

That the extent and value of the shares and interests of the several parties in Elwood's estate subject to partition, after making all proper deductions, was as follows:

| | | |
|---|---|---|
| Mumford, Worcester, and Scholey, as executors of Mrs. Scholey, and Scholey as her residuary legatee, . . . . . . . . | | $154,894 10 |
| Elwood's children—Frank, . $104,113 22 | | |
| Agnes, . 103,359 87 | | |
| Elizabeth, . 105,034 87—$312,507 90 | | |
| | | $467,402 00 |

That the referees had determined that actual partition of said personal estate could be made between all said parties, and had made such partition, and had set apart to Mrs. Scholey's executors, in full of all claim which they or her residuary legatee might have upon Elwood's estate, the following property:

| | |
|---|---|
| Bonds of the United States, . . . . . | $128,151 25 |
| Railroad and telegraph bonds, . . . . | 7,525 00 |
| Bond and mortgage, . . . . . . | 9,218 75 |
| Promissory note, . . . . . . . | 5,098 10 |
| Railroad stocks, . . . . . . . | 720 00 |
| Cash, . . . . . . . . . | 4,181 00 |
| | $154,894 10 |

That the referees had set apart to Elwood's three children their respective shares as above stated, schedules of which

similar to the foregoing were given, and each schedule contained as the last item:

> " One-third of the appraised valuation of the Elwood
>     block and Mill Street building,  .    .    .    .  $50,037 "

That they had not included the Elwood block in the partition between Elwood's three children, because it was not capable of actual partition.

A judgment was entered upon this report December 8th, 1870, reciting the partition, including the setting apart to each of the children of the undivided one-third of the Elwood block; confirming such partition, and adjudging that the complainant Mumford should remain in possession of the Elwood block as trustee for the children until they should respectively become of age.

Upon these facts the plaintiff here, Scholey, was assessed for a succession tax of six per cent. upon $45,000, as the value of one-third interest in the Elwood block. He asserted that he was not liable to such tax; that he never was entitled to such real estate or any part of it, and that he never had any interest in it as a successor. He appealed from the assessment to the Commissioner of Internal Revenue, who decided the appeal adversely to him, whereupon he paid the defendant, May 30th, 1871, the amount so assessed, being $2700, under compulsion and protest, and on the following day demanded repayment thereof, which was refused.

Upon this case, found as already said by the court, the plaintiff's counsel requested the court to order judgment against the defendant for $2700 and interest. But the court held, as a matter of law, that on the statutes governing the case and immediately hereinafter cited the defendant was entitled to judgment, and judgment was entered accordingly.

The assignment of errors was thus made on the brief of the plaintiff in error:

" The sole question in the case is, was the plaintiff liable to a succession tax upon this property? The sole error assigned is the decision of the court in the affirmative."

The statute in relation to " succession taxes," in force at

the time of Mrs. Scholey's death, in September, 1869, was the original Internal Revenue Act of June 30th, 1864,* as amended by the act of July 13th, 1866.†

It enacts : ‡

That for the purposes of the act " the term ' real estate ' shall include all lands, tenements, and hereditaments, corporeal and incorporeal;" and that the term ' succession ' shall denote the *devolution of title* to any real estate."

" That every past or future disposition of real estate by will, deed, or laws of descent, by reason whereof any person shall become beneficially entitled, in possession or expectancy, to any real estate, or the income thereof, upon the death of any person dying after the passing of this act, shall be deemed to confer, on the person entitled by reason of any such disposition, a·' succession.' "

That " there shall be levied and paid to the United States in respect of every such succession as aforesaid, according to the value thereof," duties at rates depending upon the degree of consanguinity between predecessor and successor; and where the successor is "a stranger in blood," at the rate of *six per cent.*

That the duty "shall be paid at the time when the successor, or any person in his right or on his behalf, shall become *entitled in possession* to his succession, or to the receipt of the income and profits thereof;" except that if it afterwards becomes more valuable by the determination of a prior charge upon or interest in it, an additional duty shall then be paid on its increased value.

That " the interest of any successor in moneys to arise from the sale of real estate, under any trust for the sale thereof, shall be deemed to be a succession chargeable with duty under this act, and the said duty shall be paid by the trustee, executor, or other person having control of the funds."

Also, that " the interest of any successor in personal prop-

---

* 13 Stat. at Large, 287–291, §§ 126–150.            † 14 Id. 140, 141.
‡ §§ 126, 127, 133, 137, 138, 139.

erty, subject to any trust for the investment thereof in the purchase of real estate *to which the successor would be absolutely entitled,* shall be chargeable with duty as above."

The succession tax is by the act creating it* made a " lien" on the land, " in respect whereof" it is laid, and is to be " collected by the same officers, in the same manner, and by the same processes as direct taxes upon lands under the authority of the United States."†

By the same statute which imposes the duty on the succession to real property, a duty is also laid on legacies and distributive shares of personal property.‡  But while the rates of duty, as in the case of real property, vary with the degree of consanguinity, all *personal* property passing *from wife to husband* is exempt from tax, as well as that which passes from husband to wife, the succession to real property being exempt *only* in the latter case.§

*Mr. Theodore Bacon, for the plaintiff in error:*

I. *The statute imposing this duty is unconstitutional.*

It is within the prohibitions of the Constitution, which ordain that—

" Direct taxes shall be apportioned among the several States . . . according to their respective numbers."

And that—

" No capitation or other direct tax shall be laid unless in proportion to the census," &c.

The tax is a " direct tax," within all the decisions upon this subject, and it will be admitted that it is not laid in proportion to the census.

The opinions in the carriage-tax case, *Hylton* v. *The United States,*‖ while narrowing down the constitutional restriction to the utmost, distinctly recognize " a tax on land" as the *only* direct tax contemplated by the Constitution, except a capitation tax.

---

* §§ 145, 146.                                    † § 150.
‡ 13 Stat. at Large, 285–287, §§ 124, 125.        § Ib. 286, § 124 *ad finem.*
‖ 3 Dallas, 175, 177, and 183.

These views are approved in *Pacific Insurance Company* v. *Soule.**

The present is a tax *on land*, if ever one was. No doubt it is to be paid by the owner of the land, if he can be made to pay it; but that is true of any tax that ever was, or ever can be imposed on property. And as if to prove how directly the property, and not the property owner, is aimed at, the duty is made a specific lien and charge upon the land "in respect whereof" it is assessed.

More than this: as if to show how identical, in the opinion of Congress, this duty was with the avowedly direct tax upon lands which it had levied but a year or two before, it enacts that this *succession tax alone*, out of a great revenue system, should be collected by the same officers, in the same manner, and by the same processes as direct taxes upon lands under the authority of the United States.

II. *But, assuming the act to be valid, this case is not within it.*

1. There has been no "devolution of title to any real estate," either upon the plaintiff or upon any one else. And this is the statutory definition of a "succession."

The *title* to the Elwood block is, where it has always been since May, 1864, in the executors of Elwood.

2. The plaintiff has not "become beneficially entitled, in possession or expectancy, to any real estate, or the income thereof."

His testatrix never was "entitled" to the Elwood block, or to the income from it. Whatever rights she had were personal claims against the executors for a certain proportional interest in Elwood's *personal* property.

3. The orders of the Supreme Court of New York, obtained *ex parte*, assuming to authorize the acting executor of Elwood's will to invest certain funds in this block, were without effect, except as being a sort of evidence of good faith in the executors in making the investment. The beneficiaries under the will were still entitled to hold them to account for the personalty which came to their hands; and

* 7 Wallace, 444–451; and see Veazie Bank *v.* Fenno, 8 Id. 533; per Chase, C. J., 542–546.

if the investment should prove unprofitable, to deny the propriety of it, and compel them to respond for the amount invested, as upon an abuse of their discretion. The circumstance that a justice of the Supreme Court concurred with them in considering the investment a desirable one, might tend to prove their good faith, but it could not discharge them.

The only investments authorized in the State of New York for funds like these, are such as allow of their being always subject to recall, principal as well as interest, for the benefit of the *cestuis que trust,* and these are well settled to be government stocks and loans upon real estate to much less than its value.*

4. But conceding the right of the executors to make the investment, their duty would be clear to *sell* the property again and reconvert it into government stocks or bonds and mortgages, if at any time they should be of opinion that the preservation of the fund demanded such change.

If they had, at least any time before the Elwood block was specifically set apart from the body of the estate to the three infant children, judged such sale to be advantageous, neither Mrs. Scholey in her lifetime, nor this plaintiff after her death, could have forbidden such change of investment. And notwithstanding all objections on the part of any beneficiary of the estate, the executors would have given absolute title, legal and equitable, to the purchaser, by their deed.

Nor has there ever been a time when Mrs. Scholey in her lifetime, or this plaintiff since her death, could compel either a partition or a conveyance of a share of the block, or an assignment of a fixed proportion of its income. How, then, could either of them be said to have "title" to either the block or its income; and how would that "title" be described?

Possibly *all* the beneficiaries together might have ratified the investment, but the dissent of one would have deprived an attempted ratification of all force. And three were infants and incompetent either to ratify or repudiate.

---

* King *v.* Talbot, 40 New York, 76.

If, upon the distribution of the estate, this plaintiff had insisted that he was entitled, as the assessor asserts, to one-third of the Elwood block in severalty, both the executors and the court would have repudiated his claim, and would have told him, as their decree in fact told him, that his right was only to receive personal securities and money to an amount to be ascertained upon an accounting.

If Mrs. Scholey had died intestate, it is expressly adjudicated that her interest in the Elwood estate, except so far as it was realty at the time of Elwood's death, would have passed as assets to her administrator, instead of descending to her heirs.*

And this proposition seems to us conclusive of this case, for the statute nowhere distinguishes, in laying duties upon "legacies or distributive shares of personal property," on the one hand, and upon "successions to real estate" on the other, between descents by will and by operation of law. The fact that Mrs. Scholey made a will, while it makes an important difference as to who shall receive her property, can make none whatever as to its liability to pay a tax to the United States.

5. But this plaintiff never got anything like the rights even which his testatrix had. Her interest in this block has been appraised by the assessor at $45,000. But before the residuary legatee gets anything from her estate he must satisfy special legacies amounting to $6500, and pay certain annual charges for an indefinite period, amounting to $4100 a year, to say nothing of debts. It does not appear that there is *any* residuum for the plaintiff. But if, upon his final accounting as administrator, it shall turn out that there is a residue—which may well be less than the amount upon which he has paid "succession duty"—with what propriety is *his* share to be called real estate and charged with this tax, any more than the shares of the other distributees?

6. If it should be argued that he had, before distribution

---

* Rogers *v.* Patterson, 4 Paige, 409; Gibson *v* Scudamore, 1 Dickens, 45; Witter *v.* Witter, 3 Peere Williams, 99; Earl of Winchelsea *v.* Norcliffe, 1 Vernon, 435; Awdley *v.* Awdley, 2 Id. 192.

of the Elwood estate, some title "in expectancy" to the block or some part of it, it was not until he should become entitled "in possession" that the duty was to be paid. That certainly had not happened when this tax was levied and collected.*

7. So far as cases at all analogous appear in the books, the authorities seem to support our position.†

III. *The plaintiff is an alien. If Mrs. Scholey's alleged interest in the Elwood block was an "interest in real estate," the alleged devise of it to him was absolutely void by statute of New York.*

The statute enacts :‡

"SECTION 4. Every devise of any interest in real property, to a person who, at the time of the death of the testator, shall be an alien, not authorized by statute to hold real estate, shall be void. The interest so devised shall descend to the heirs of the testator; if there be no such heirs competent to take, it shall pass under his will to the residuary devisees therein named, if any there be, competent to take such interest."

If, under the laws of New York, Scholey got no "interest in real estate," he cannot be made to pay tax upon an interest.

It is no answer to say: this *is* an interest in real estate; the plaintiff has in fact got it; therefore he ought to pay duty on it. For if both premises were true the syllogism is not complete. It is further necessary, in order that the duty should attach, that he should have taken it "by will, deed, or laws of descent." There is no pretence of a deed. The will, so far as this is concerned, is void. Instead of taking *by* the law, he takes in spite of the law.

*Mr. C. H. Hill, Assistant Attorney-General, contra, for the collector, defendant in error :*

I. The succession tax is not a "direct tax" within the

---

* Blake *v.* McCartney, 10 Internal Revenue Record, 131.

† Attorney-General *v.* Holford,. 1 Price, 426; Custance *v.* Bradshaw, 4 Hare, 315; United States *v.* Watts, 1 Bond, 578.

‡ Revised Statutes of New York, part 2, chapter 6, title 1, article 1.

meaning of that term in the Constitution, and is ·constitutional and valid.   The construction always given to Article 1, indicates that the only taxes which the Constitution regards as direct taxes, are capitation taxes and taxes imposed immediately on land, and which are capable of apportionment without producing any inequality· or injustice.*

The term seems to have been derived from the Roman law, which recognized two·kinds of direct taxes; a capitation tax (*capitis tributum*). and a land tax (*agri tributum*).   Italy and privileged towns, which were exempted from these taxes, paid a tax of five per cent. on all testamentary successions (*vicesima hereditatum*), and on manumitted slaves, which together with customs and excises, seems to have been first imposed in the time of Augustus.†

If all taxes that political economists regard as direct taxes should be held to fall within those words in the Constitution, Congress would be deprived of the practical power to impose such taxes, and the taxing power would be thus greatly crippled; for no Congress would dare to apportion, for instance, the income tax.   Hamilton,‡ whose brief is preserved to us in his works published by Congress, said in arguing *Hylton* v.   *United States :*§

"It would be contrary to reason and every rule of sound construction, to adopt a principle for regulating the exercise of a clear constitutional power which would defeat the exercise of the power."

A succession tax is not a direct tax to any greater extent than the income tax, which was held by Mr. Justice Strong,‖ in the Third Circuit, to be constitutional and valid.

---

* Hylton *v.* United States, 3 Dallas, 171; Pacific Insurance Company *v.* Soule, 7 Wallace, 433, 446; Veazie Bank *v.* Fenno, 8 Id. 533, 546;  7 Hamilton's Works, 845; 1 Kent's Commentaries, 254*–256*; 1 Story on the Constitution, §§ 954, *et seq.*

† Poste's Gaius,·145, 146; Gibbon's Decline and Fall of the Roman Empire, ch. 6.

‡ 7 Hamilton's Works, 845.

§ 3 Dallas, 171.

‖ Clark *v.* Sickel, 14 Internal Revenue Record, 6.

It is assessed upon the landowner "in respect of" the property. Making it a lien upon the land is only a method of securing the tax, and does not make the tax a direct tax on land. The distinction is illustrated by the rule of law that a covenant in a lease to pay taxes assessed on the demised land, does not cover a tax imposed on the landlord in respect of the land.*

II. Under his wife's will, Scholey took an equitable interest in one-third of the estate in question, and he is liable to pay a succession tax in respect thereof, under section 127 of the act of June 30th, 1864.† He became entitled to the income of one-third of the Elwood block, upon the death of his testatrix, that is to say, of his wife, who had herself invested the personal property left by her first husband in this estate; and he consequently became liable to pay a succession tax in respect of the same.

If the Supreme Court had jurisdiction to authorize the investment of the personal estate of Elwood, in the purchase of real estate by his executors, its decree in the premises was in the nature of a proceeding *in rem,* and bound all persons interested therein ;‡ and there is nothing in the record to show that its jurisdiction was not complete.

But there is no question here as to whether equity would treat the Elwood block as real or personal property. The property of Mrs. Elwood devised under her first husband's will had been converted by her own act into real property before she devised the same to her second husband, and this brings the case within the language of the statute. If Scholey thus acquired an interest in the Elwood block, the subsequent partition, whereby this entire estate was set off to the heirs of Elwood, does not relieve him from liability

---

* 2 Platt on Leases, 172, and cases cited; Palmer *v.* Power, 4 Irish Common Law, 191; Tidswell *v.* Whitworth, Law Reports, 2 Common Pleas, 326; Twycross *v.* Railroad, 10 Gray, 293; see also Society for Savings *v.* Coite, 6 Wallace, 594; Provident Institution *v.* Massachusetts, Id. 611.

† 13 Stat. at Large, 287, 288.

‡ Comstock *v.* Crawford, 3 Wallace, 396; Blount *v.* Darrach, 4 Washington Circuit Court, 657; Forsythe *v.* Ballance, 6 McLean, 562; Merriam *v.* White, 8 Gray, 316; Denny *v.* Mattoon, 2 Allen, 374–376.

to pay a succession tax in respect of his share of it. He received its full value in other property.

The objection that Scholey being an alien, cannot take real estate by devise under the laws of New York, but that such pretended devise is made by them absolutely void, does not seem to have been taken below; but if open to be taken here, is of no avail, for two reasons:

1st. There is nothing to show that Scholey has not been authorized to hold real estate in the manner provided for in the statute cited by him. Indeed, as he received the benefit of the devise, the presumption would be that he had been so authorized.

2d. He having never disclaimed any interest in the devise, and having received its value in the partition of the Elwood estate, from those to whom it would descend if the devise to him is void, is estopped to set up alienage in order to avoid the payment of the succession tax due on the estate. Having received the benefit of the devise, he must bear any burden attaching to it; and the government being entitled to a tax from some one in respect of this estate, may take advantage of the estoppel, being precluded by Scholey's action from claiming a tax from the heirs at law.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Questions of importance were discussed at the bar, some of which it cannot be admitted are properly presented for decision. Such questions only as are specified in the assignment of errors are, in general, to be regarded as open to the plaintiff, and it is very doubtful whether an assignment that the decision of the Circuit Court is for the wrong party is sufficient to present any question for decision, but inasmuch as the findings of the court in this case are in their nature a special finding, the better opinion is that their sufficiency to support the judgment is open to re-examination.

---

* Flanigan v. Turner, 1 Black, 491; Swain v. Seamens, 9 Wallace, 273, 274; Pendleton County v. Amy, 13 Id. 297, 305; Pickard v. Sears, 6 Adolphus & Ellis, 469; Welland Canal v. Hathaway, 8 Wendell, 483; Dezell v. Odell, 3 Hill, 215, 221, et seq.; Coke Littleton, 352a, 352b; Bigelow on Estoppel, 578, et seq., and cases cited.

Enough has already appeared to show that the plaintiff took under his wife's will an equitable interest in one-third of the estate in question, and the United States contend that in view of those facts he is liable to pay a succession tax or duty in respect of the same by virtue of the act passed to levy such taxes, as it applies to every past or future disposition of real estate by will, deed, or laws of descent, by reason whereof any person shall become beneficially entitled in possession or expectancy to any real estate, *or the income thereof*, upon the death of any person dying after the passage of that act.

Apply the rule to be deduced from that enactment to the facts found by the court, and it must follow that the argument of the United States is well founded, unless some one or more of the special objections to the tax set up by the plaintiff are sufficient to exonerate him from such liability. Those objections are as follows: (1.) That the act imposing the duty is unconstitutional and void. (2.) That the case is not one within the act imposing the tax or duty. (3.) That the plaintiff being an alien the devise to him is absolutely void.

1. Support to the first objection is attempted to be drawn from that clause of the Constitution which provides that direct taxes shall be apportioned among the several States which may be included within the Union, according to their respective numbers; and also from the clause which provides that no capitation or other direct tax shall be laid unless in proportion to the census or amended enumeration; but it is clear that the tax or duty levied by the act under consideration is not a direct tax within the meaning of either of those provisions. Instead of that it is plainly an excise tax or duty, authorized by section eight of article one, which vests the power in Congress to lay and collect taxes, duties, imposts, and excises to pay the debts and provide for the common defence and general welfare.

Such a tax or duty is neither a tax on land nor a capitation exaction; as subsequently appears from the language of the section imposing the tax or duty, as well as from the

preceding section, which provides that the term succession shall denote the devolution of real estate; and the section which imposes the tax or duty also contains a corresponding clause which provides that the term successor shall denote the person so entitled, and that the term predecessor shall denote the grantor, testator, ancestor, or other person from whom the interest of the successor has been or shall be derived.

Successor is employed in the act as the correlative to predecessor, and the succession or devolution of the real estate is the subject-matter of the tax or duty, or, in other words, it is the right to become the successor of real estate upon the death of the predecessor, whether the devolution or disposition of the same is effected by will, deed, or laws of descent, from a grantor, testator, ancestor, or other person from whom the interest of the successor has been or shall be derived; nor is the question affected in the least by the fact that the tax or duty is made a lien upon the land, as the lien is merely an appropriate regulation to secure the collection of the exaction.

Indirect taxes, such as duties of impost and excises and every other description of the same, must be uniform, and direct taxes must be laid in proportion to the census or enumeration as remodelled in the fourteenth amendment. Taxes on lands, houses, and other permanent real estate have always been deemed to be direct taxes, and capitation taxes, by the express words of the Constitution, are within the same category, but it never has been decided that any other legal exactions for the support of the Federal government fall within the condition that unless laid in proportion to numbers that the assessment is invalid.*

Whether direct taxes in the sense of the Constitution comprehend any other tax than a capitation tax and a tax on land is a question not absolutely decided, nor is it necessary to determine it in the present case, as it is expressly decided that the term does not include the tax on income,

---

* Hylton *v.* United States, 3 Dallas, 171; 1 Kent, 12th ed., 255; Story on the Constitution, § 955.

which cannot be distinguished in principle from a succession tax such as the one involved in the present controversy. *

Neither duties nor excises were regarded as direct taxes by the authors of the *Federalist.* Objection was made to the power to impose such taxes, and in answering that objection Mr. Hamilton said that the proportion of these taxes is not to be left to the discretion of the national legislature, but it is to be determined by the numbers of each State, as described in the second section of the first article. An actual census or enumeration of the people must furnish the rule, a circumstance which shuts the door to partiality or oppression. In addition to the precaution just mentioned, said he, there is a provision that all duties of imposts and excises shall be uniform throughout the United States.†

Exactions for the support of the government may assume the form of duties, imposts, or excises, or they may also assume the form of license fees for permission to carry on particular occupations or to enjoy special franchises, or they may be specific in form, as when levied upon corporations in reference to the amount of capital stock or to the business done or profits earned by the individual or corporation.‡

2. Sufficient appears in the prior suggestions to define the language employed and to point out what is the true intent and meaning of the provision, and to make it plain that the exaction is not a tax upon the land, and that it was rightfully levied, if the findings of the court show that the plaintiff became entitled, in the language of the section, or acquired the estate or the right to the income thereof by the devolution of the title to the same, as assumed by the United States.

Doubt upon that subject, it would seem, cannot be entertained if it be conceded that the subject-matter of the assessment is the devolution of the estate or the right to become

---

* Insurance Co. *v.* Soule, 7 Wallace, 446; Bank *v.* Fenno, 8 Wallace, 546; Clark *v.* Sickel, 14 Internal Revenue Record, 6.

† Federalist, No. 36, p. 161; 7 Hamilton's Works, 847; License Tax Cases, 5 Wallace, 462.

‡ Cooley on Constitutional Limitations, 495*; Provident Institution *v.* Massachusetts, 6 Wallace, 625; Bank *v.* Apthorp, 12 Massachusetts, 252.

beneficially entitled to the same, or the income thereof, in possession or expectancy, under the circumstances and conditions specified in the other parts of the section.

Decided support to the proposition that such is the true theory of the act is derived from the fact that the act of Parliament from which the particular provision under discussion was largely borrowed has received substantially the same construction.*

Suppose that to be the true construction of the act imposing the duty, and it is undeniable that the case before the court falls within its operation, unless the fact that the plaintiff is an alien exonerates him from such an exaction. Proof of the introductory proposition is found in the conceded fact that the testatrix in her lifetime invested the personal property left her by the will of her first husband, or some part of it, in the said real estate, and that the plaintiff became entitled to the same or to the income of one-third of the same at her decease, and consequently became liable to pay the succession tax or duty in question unless he is exempted from the liability by his alienage.

He does not deny that the investment of the personal property in the manner stated was made by the executrix and her associates, under the decree of the Supreme Court of the State, nor does he attempt to impugn the regularity or the validity of those proceedings, nor is there anything in the record that would enable him to do so with success if the attempt was made. Proceedings, it is true, were instituted to effect a partition of the estate of the testatrix, and it is equally true that those proceedings were carried forward to final judgment, from which it appears that the entire block, in respect of which the controversy has arisen, was set off to the heirs of his deceased wife, but it is clear

---

* Wilcox *v.* Smith, 4 Drewry, 49; Blythe *v.* Granville, 13 Simons, 195; Attorney-General *v.* Middleton, 3 Hurlstone & Norman, 136; Same *v.* Fitz-John, 2 Id. 472; Same *v.* Gardner, 1 Hurlstone & Coleman, 649; Same *v.* Gell, 3 Id. 629; Braybrooke *v.* Attorney-General, 9 Clark (House of Lords Cases), 165; Lyall *v.* Lyall, Law Reports, 15 Equity, 11; Jeves *v.* Shadwell, Law Reports, 1 Chancery Appeals, 1; In re Badart, Law Reports, 10 Equity, 296.

that that circumstance cannot relieve him from liability to pay a succession tax in respect to his share of the estate, for the obvious reason that he received its full value in other property assigned to him belonging to the same estate.

Beyond what may be inferred from the finding of the court, that the plaintiff is an alien, it does not appear that the defence of alienage was set up in the court below, nor does the assignment of errors contain any specification of such a question, except that the plaintiff is not liable to a succession tax and that the decision of the court below that he is so liable is erroneous. Such an assignment is not a compliance with the rule upon that subject, but the court is not inclined to rest the decision upon that ground.

Admit that the question is open, still the court is of the opinion that it cannot avail the plaintiff in this case, even under the comprehensive provision of the State statute. By that statute it is enacted that every devise of any interest in real property to a person who, at the time of the death of the testator, shall be an alien, not authorized by statute to hold real estate, shall be void.*

Nothing appears in the record of an express character to show that the plaintiff was ever authorized by statute to hold real estate, but it does appear that he claimed a one-third interest in the block in respect of which the succession tax was levied, and that his claim was recognized by the court and all the parties in the partition suit, and that the same was finally adjudged to him in the judgment of partition by an allowance for the value in other property left by the testatrix; nor can it make any difference that the corresponding allowance to him was of personal property, never converted into real estate, as the record of the proceedings in partition shows that the referees, whose report was confirmed and adopted by the court, adjusted the amounts as if the block was personal property, probably for the reason that the consideration of the same at the time of the investment was paid out of the personal property left by the former husband of the testatrix.

---

* 2 Revised Statutes of New York, 58.

Difficulty, it may be admitted, would attend the solution of the question if the issue was one between the plaintiff and the heirs at law of the testatrix, but the record shows that the testatrix became the owner of the property in the manner before stated, and that the interest claimed by the plaintiff was devised to him by the actual owner, and that he claimed it as if entitled to it under the will of the testatrix, and that he received one-third part of the income of the same from her decease to the commencement of the suit for partition, and that the claim made by him was fully recognized and included in the judgment of partition, and nothing is shown to support the theory that he is not still in the undisputed enjoyment of the allowance made to him in substitution for the one-third interest of the estate in respect of which the succession tax was levied.

Except for the purpose of avoiding the tax or duty due to the United States he has always claimed the benefit of the devise and still claims it for every other purpose. Had he disclaimed the right to take the interest devised to him the actual devolution of the estate would have given the right of possession to the heirs, either by the will or by the law of descent, and in that event the United States would not have met with any embarrassment in levying and collecting the succession tax or duty. By the terms of the will the devise was to the plaintiff, and inasmuch as he claimed the benefit of it without opposition, and has continued to enjoy its use, as before explained, to the present time, it followed that the heirs could not be subjected to such an exaction.

Tested by these suggestions it is clear that the claim of the plaintiff to recover back the amount of the tax or duty is inequitable, and in that regard the court here concurs in the proposition submitted by the United States, that the plaintiff is estopped to set up alienage as a ground of recovery under the circumstances of this case.*

---

* Swain *v.* Seamans, 9 Wallace, 273; Picard *v.* Sears, 6 Adolphus & Ellis, 474; Freeman *v.* Cooke, 2 Exchequer, 654; Foster *v.* Dawber, 6 Id. 854; Edwards *v.* Chapman, 1 Meeson & Welsby, 231; Bigelow on Estoppel, 378; Hyde *v.* Baldwin, 17 Pickering, 303.

Having accepted the beneficial interest under the will, and being in the undisturbed enjoyment of the same, he must bear the burden which legally attaches to the interest.

JUDGMENT AFFIRMED.