**BLODGETT v. HOLDEN, Collector of Internal Revenue.**

(District Court, W. D. Michigan, S. D. February 17, 1926.)

**1. Internal revenue ⊜═2—Gift tax held not a direct tax, invalid under Constitution for want of apportionment (Revenue Act 1924, §§ 319–324 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]; Const. art. 1, § 2, cl. 3, article 1, § 8, cl. 1, and article 1, § 9, cl. 4).**

Gift tax, imposed by Revenue Act 1924, §§ 319–324 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), is a tax on the transmission or transfer itself, not on the property, nor on the right to transfer, and hence is an excise tax, not a direct tax, invalid for want of apportionment, under Const. art. 1, § 2, cl. 3, article 1, § 8 cl. 1, and article 1, § 9, cl. 4.

**2. Constitutional law ⊜═45.**

Judiciary has power, and in proper cases duty, to declare act of Congress unconstitutional.

**3. Constitutional law ⊜═70(3).**

Courts must not concern themselves with the expediency, wisdom, or essential justice of revenue legislation.

**4. Internal revenue ⊜═2.**

Requirement of uniformity of indirect taxes, in Const. art. 1, § 8, cl. 1, is geographic, and not intrinsic.

**5. Internal revenue. ⊜═2.**

Definitions and theories of political economists are not accepted, in determining whether tax is direct, within Const. art. 1, § 2, cl. 3, and article 1, § 9, cl. 4.

**6. Gifts ⊜═18(1).**

Gift can be consummated only by actual delivery.

**7. Constitutional law ⊂⊃286—Eminent domain ⊂⊃2(11)—Internal revenue ⊂⊃2—Gift tax, retroactively effective, held not abuse of congressional powers, or taking of property without due process or just compensation (Revenue Act 1924, §§ 319–324 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]; Const. Amend. 5).**

Revenue Act 1924, §§ 319–324 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), imposing a gift tax effective June 2, 1924, but made retroactively effective for whole calendar year, *held* not an abuse of congressional powers, nor a taking of property without due process or without just compensation, in violation of Const. Amend. 5.

**8. Constitutional law ⊂⊃286.**

Const. Amend. 5, does not operate to limit or destroy broad powers of Congress to impose taxes.

**9. Constitutional law ⊂⊃186.**

Except ex post facto laws, Congress has power to enact retroactive legislation.

**10. Internal revenue ⊂⊃2—Tax on gift of state and municipal securities held not unlawful interference with governmental functions (Revenue Act 1924, §§ 319–324 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]; Const. Amend. 10).**

Revenue Act 1924, §§ 319–324 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), imposing tax on gift of state and municipal securities, *held* not an unlawful interference with governmental functions of state and municipalities, in violation of Const. Amend. 10.

**11. Taxation ⊂⊃4, 16.**

That state or federal tax may have some effect on taxing power of the other government does not necessarily result in invalidity.

**12. Constitutional law ⊂⊃93(1)—Internal revenue ⊂⊃2—Gift tax, retroactively applied, held not infringement of vested rights, or a direct tax, because of lien created (Revenue Act 1924, §§ 319–324 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]).**

Gift tax, imposed by Revenue Act 1924, §§ 319–324 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), as retroactively applied to gifts before the effective date of the act, *held* not invalid as an infringement of vested rights, or a direct tax, because of lien on property created thereby.

**13. Internal revenue ⊂⊃2.**

That tax law creates a lien on property does not change the character of the tax from an excise to a direct tax.

**14. Internal revenue ⊂⊃2—Gift tax held not an encroachment on states' rights to regulate disposition of property (Revenue Act 1924, §§ 319–324 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]; Const. Amend. 10).**

Revenue Act 1924, §§ 319–324 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), imposing gift tax, *held* not encroachment on powers to regulate property, reserved to the states by Const. Amend. 10.

**15. Constitutional law ⊂⊃48.**

Only when violation of constitutional requirements is clear and beyond reasonable doubt, should the courts interfere.

At Law. Action by John W. Blodgett against Charles Holden, as Collector of Internal Revenue for the Fourth Collection District of Michigan. On defendant's motion to dismiss. Motion granted.

Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for plaintiff.

E. J. Bowman, U. S. Dist. Atty., of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge. This suit is brought to recover "gift taxes," amounting to $52,023.52, levied and collected from plaintiff under the provisions of part 2 of title 3 of the Revenue Act of 1924 (43 Stat. 253–313 [Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x]). The matter is now before the court on motion to dismiss, made by defendant on the ground that the amended declaration does not state facts sufficient to constitute a cause of action. The facts alleged by the amended declaration and admitted by the motion are in substance these:

That on or about March 11, 1925, pursuant to the provisions of the Revenue Act of 1924, plaintiff duly reported the total amount of gifts made by him during the calendar year of 1924 as $872,095.66. Exclusive of gifts for charitable, public, and similar purposes, which were exempt, the total gifts were $850,196.02. A specific exemption of $50,000 was deducted, leaving the net amount of taxable gifts reported $800,196.02. Of the gifts not exempt as charities, etc., $843,696 represented gifts made prior to June 2, 1924, the date the gift tax law became effective, and $6,500.02 represented gifts after that date. Of the $843,696 given before June 2, 1924, $818,086.02 consisted of state and municipal bonds. On March 14, 1925, plaintiff, under protest that there was no valid law authorizing the exaction of the tax, paid to defendant the sum of $52,023.52, the amount of the tax indicated by the return. On the same day he made claim for refund, which was denied, and this suit has been brought to recover the amount so paid.

It is the claim of plaintiff that sections 319 to 324, inclusive, of the Revenue Act of 1924 (Comp. St. Supp. 1925, §§ 6336⅘s–6336⅘x), are unconstitutional, and the sole question presented to the court is whether those sections are in conflict with the Constitution. Plaintiff alleges that said provi-

sions are repugnant to the Constitution for the following reasons:

(1) That the gift tax is a direct tax, and a violation of clause 3 of section 2, and clause 4 of section 9, of article 1 of the Constitution, in that it is not apportioned as therein required.

(2) Because the exaction of a gift tax deprives plaintiff of his property without due process of law, and is a taking of plaintiff's property for public use without just compensation, in violation of the Fifth Amendment to the Constitution.

(3) Because the taxes imposed by said sections (and particularly as to gifts made prior to the date the gift tax law became effective) are in effect taxes upon the borrowing power of the states, and upon the governmental agencies of the states.

(4) Because (particularly as to gifts made prior to June 2, 1924) the tax is a direct tax, and in violation of the constitutional provisions to which reference has been made.

(5) Because said tax is an encroachment upon the powers reserved to the states or to the people, contrary to the Tenth Amendment to the Constitution.

[1] The substance of the pertinent sections of the statute relating to the gift tax is as follows:

Section 319 provides that, for the calendar year 1924 and each calendar year thereafter, a tax based upon a certain graduated scale therein set forth is imposed upon the transfer by gift of any property, wherever situated, whether made directly or indirectly. The table of percentages provides for various rates, beginning at 1 per cent. on an amount of taxable gifts not in excess of $50,000, 2 per cent. of the amount by which the taxable gifts exceed $50,000 and do not exceed $100,000, and so on; the rates gradually increasing to a maximum of 40 per cent. on the amount of taxable gifts in excess of $10,000,000.

Section 320 provides in substance that, if the gift is made in property, the fair market value shall be considered the amount of the gift, and, where property is sold or exchanged for less than a fair consideration, the difference between the actual consideration and fair market value shall be deemed a gift.

Section 321 provides in substance for the following exemptions: (1) Gifts aggregating in value $50,000 in any calendar year; (2) gifts for public purposes, or to corporations organized exclusively for religious, charitable, scientific, literary, educational, or

similar purposes; (3) gifts to any one person aggregating $500 in any calendar year; (4) property transferred by gift, identified as having been received by the donor within five years prior to the gift, and upon which a gift tax has been paid.

Section 322 contains appropriate provisions to prevent the duplication of the estate tax and gift tax upon the same property.

Sections 323 and 324 provide for filing of returns and the payment of the tax assessed thereon.

This is the first instance of the taxation of gifts inter vivos in the history of American or English taxation. So far as known, no other country, except France, has imposed a similar tax. Apparently no court heretofore has passed upon the questions which are here involved. The nearest approach to the gift tax are those taxes imposed by the inheritance tax laws of the various states and by the federal estate tax law upon transfers made in contemplation of death, which provide generally that transfers made by a decedent within a specified period of time (usually two to six years prior to death) shall be deemed to have been made in contemplation of death. But transfers by gift unconnected with death never before have been taxed.

[2] There is no longer any question that the judicial department of the government has the power, and in proper cases the duty, to declare an act of Congress unconstitutional. The duty and responsibility resting upon the court was stated by Chief Justice Marshall as follows:

"The question, whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." Fletcher v. Peck, 6 Cranch, 87, 128, 3 L. Ed. 162.

See, also, Pollock v. Farmers' Loan & Trust Co., 15 S. Ct. 912, 158 U. S. 601, 617, 39 L. Ed. 1108, and Ogden v. Saunders, 12 Wheat. 213, 270, 6 L. Ed. 606.

When the question involves the exercise

by Congress of its taxing powers, the limitations upon the power of the court are well stated in the opinion of Justice Peckham in the case of Nicol v. Ames, 19 S. Ct. 522, 525, 173 U. S. 509, 514 (43 L. Ed. 786), where it is said:

"It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest. This is particularly true of a revenue act of Congress. The provisions of such an act should not be lightly or unadvisedly set aside, although, if they be plainly antagonistic to the Constitution, it is the duty of the court to so declare. The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive."

On the other hand, it has been frequently declared that, since judges are sworn to support the provisions of the Constitution, they cannot disregard its commands, and a statute which clearly and unmistakably transgresses must be declared unconstitutional.

[3] Courts must not concern themselves with the expediency, wisdom, or essential justice of revenue legislation. See Flint v. Stone Tracy Co., 31 S. Ct. 342, 220 U. S. 107, 167, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. These considerations are, under our form of government, solely for the legislative branch of the government. The exclusive remedy for the seeming failure of Congress in such matters to give due consideration to these subjects is with the electors in their choice of representatives. For the courts to assume supremacy on these matters would be to confuse the powers conferred upon the three great departments of government, and to increase the evils which it may be said already are attendant upon the indiscriminate vesting of legislative, executive, and judicial functions in sundry state and federal boards and commissions. To permit the slightest interference by one department with the functions of another, or the confusion of these distinct departments of government, is to inject chaos into a delicately adjusted system of checks and balances. In the case of McCray v. United States, 24 S. Ct. 769, 195

U. S. 27, 49 L. Ed. 78, 1 Ann. Cas. 561, it was said:

" * * * No instance is afforded from the foundation of the government where an act, which was within a power conferred, was declared to be repugnant to the Constitution, because it appeared to the judicial mind that the particular exertion of constitutional power was either unwise or unjust."

The fact that only three revenue acts of Congress were declared unconstitutional during the first century of our national existence is indicative of the attitude of the courts on this subject.

The question of vital importance, and the one about which the contentions of counsel chiefly center on all phases of the case, is whether the gift tax is or is not a direct tax, within the meaning of the constitutional provisions referred to. Counsel for plaintiff asserts that it is a direct tax, and therefore void, because not apportioned. Counsel for defendant asserts that it is an indirect tax or excise, and therefore subject only to the requirement of uniformity.

Clause 3 of section 2 of article 1 of the Constitution, so far as pertinent, is as follows:

"Representatives and direct taxes shall be apportioned among the several states which may be included within this Union, according to their respective numbers."

Clause 4 of section 9 of article 1 is as follows:

"No capitation, or other direct, tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken."

Clause 1 of section 8 of article 1 is as follows:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

[4] That the requirement of uniformity in the section last quoted is merely a geographic and not an intrinsic one is established beyond doubt. Billings v. United States, 34 S. Ct. 421, 232 U. S. 261, 58 L. Ed. 596; Flint v. Stone Tracy Co., 31 S. Ct. 342, 220 U. S. 107, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; McCray v. United States, 24 S. Ct. 769, 195 U. S. 27, 49 L. Ed. 78, 1 Ann. Cas. 561; Knowlton v. Moore, 20 S. Ct. 747, 178 U. S. 41, 44 L. Ed. 969. It is conceded that the law imposing the gift tax complies with this requirement. The matter for first considera-

tion is therefore the true construction of the foregoing provisions of the Constitution relating to direct taxes.

The comprehensive powers of Congress to impose taxes were clearly expressed by Chief Justice White in Brushaber v. Union Pacific R. R. Co., 36 S. Ct. 236, 240 U. S. 1, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713 :

"That the authority conferred upon Congress by section 8 of article 1 'to lay and collect taxes, duties, imposts and excises' is exhaustive, and . embraces every conceivable power of taxation, has never been questioned, or, if it has, has been so often authoritatively declared as to render it necessary only to state the doctrine. * * * "

[5] It is clear that, in determining whether a tax is a direct tax within the meaning of the Constitution, our courts refuse to accept the definitions and theories of political economists. This was well expressed in the case of Nicol v. Ames, 19 S. Ct. 522, 525, 173 U. S. 509, 515, 516 (43 L. Ed. 786), as follows:

"The commands of the Constitution in this, as in all other respects, must be obeyed; direct taxes must be apportioned, while indirect taxes must be uniform throughout the United States. But, while yielding implicit obedience to these constitutional requirements, it is no part of the duty of this court to lessen, impede, or obstruct the exercise of the taxing power by merely abstruse and subtle distinctions as to the particular nature of a specified tax, where such distinction rests more upon the differing theories of political economists than upon the practical nature of the tax itself. In deciding upon the validity of a tax with reference to these requirements, no microscopic examination as to the purely economic or theoretical nature of the tax should be indulged in, for the purpose of placing it in a category which would invalidate the tax. As a mere abstract, scientific, or economical problem, a particular tax might possibly be regarded as a direct tax, when as a practical matter, pertaining to the actual operation of the tax, it might quite plainly appear to be indirect. Under such circumstances, and while varying and disputable theories might be indulged as to the real nature of the tax, a court would not be justified, for the purpose of invalidating the tax, in placing it in a class different from that to which its practical results would consign it. Taxation is eminently practical, and is in fact brought to every man's door, and for the purpose of deciding upon its validity a tax should be regarded in its actual, practical results, rather than with reference to those theoretical or abstract ideas whose correctness is the subject of dispute and contradiction among those who are experts in the science of political economy."

It has been well said that upon this subject a page of history is worth a volume of logic. Therefore the decisions of our courts interpreting the meaning and application of the words "direct taxes," as used in the Constitution, and the consideration of the practical nature and actual results of the gift tax under consideration, are important.

It is probably true that to no other subject have our eminent jurists and statesmen devoted so much of their time and talents. A brief review of the leading cases and the particular subjects of taxation considered in these cases is helpful. In each of the following cases it was contended that the tax there in question was a direct tax, and unconstitutional, because not apportioned among the several states:

In Hylton v. United States, 3 Dall. 171, 1 L. Ed. 556, a tax upon carriages which the owner kept for private use was held not to be a direct tax.

In the case of Pacific Insurance Co. v. Soule, 7 Wall. 433, 19 L. Ed. 95, the income tax law of 1864 (13 Stat. 281, §§ 116–123) was held not to impose a direct tax.

In Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482, a tax of 10 per cent. on the amount of notes paid out of any state bank or state banking association was held not a direct tax.

In Scholey v. Rew, 23 Wall. 331, 23 L. Ed. 99, a succession tax on devolution of title to real estate was held not a direct tax.

In Springer v. United States, 102 U. S. 586, 26 L. Ed. 253, an income tax was held not to be a direct tax.

In the two cases of Pollock v. Farmers' Loan & Trust Co., 15 S. Ct. 673, 157 U. S. 429, 39 L. Ed. 759, and 15 S. Ct. 912, 158 U. S. 601, 39 L. Ed. 1108, known as the "income tax cases," an income tax upon the gains and profits from real estate and personal property was held to be a direct tax.

In Nicol v. Ames, 19 S. Ct. 522, 173 U. S. 509, 43 L. Ed. 786, a stamp tax on the sales of commodities on boards of trade and exchanges was held not to be a direct tax.    •

In Knowlton v. Moore, 20 S. Ct. 747, 178 U. S. 41, 44 L. Ed. 969, a tax on legacies was held not to be a direct tax.

In Patton v. Brady, 22 S. Ct. 493, 184 U. S. 608, 46 L. Ed. 713, a tax upon manufactured tobacco was held not to be a direct tax.

In Thomas v. United States, 24 S. Ct. 305, 192 U. S. 363, 48 L. Ed. 481, a stamp

tax on sales of shares of stock in corporations was held not to be a direct tax.

In Flint v. Stone Tracy Co., 31 S. Ct. 342, 220 U. S. 107, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the 'capital stock tax law of 1909 (36 Stat. 112, § 38) was held not to impose a direct tax.

In Eisner v. Macomber, 40 S. Ct. 189, 252 U. S. 189, 64 L. Ed. 521, 9 A. L. R. 1570, a tax on stock dividends was held to be on capital increases and a direct tax.

In New York Trust Co. v. Eisner, 41 S. Ct. 506, 256 U. S. 345, 65 L. Ed. 963, 16 A. L. R. 660, a tax on the transfer of estates of decedents was held not a direct tax.

In the following cases the tax imposed was held to be an excise, and therefore not subject to the constitutional requirement of apportionment:

Patton v. Brady, 22 S. Ct. 493, 184 U. S. 608, 46 L. Ed. 713, a tax on the sale of manufactured tobacco; McCray v. United States, 24 S. Ct. 769, 195 U. S. 27, 49 L. Ed. 78, 1 Ann. Cas. 561, a tax on colored oleomargarine; Billings v. United States, 34 S. Ct. 421, 232 U. S. 261, 58 L. Ed. 596, a tax upon the use of foreign-built yachts; Bowman v. Continental Oil Co., 41 S. Ct. 606, 256 U. S. 642, 65 L. Ed. 1139, a tax upon the sale of gasoline by distributors.

A careful study of the foregoing cases demonstrates that no precise definition of a direct tax has been adopted by the courts. In the early days of our government Alexander Hamilton said:

"What is the distinction between direct and indirect taxes? It is a matter of regret that terms so uncertain and vague in so important a point are to be found in the Constitution. We shall seek in vain for any antecedent settled legal meaning to the respective terms. There is none. We shall be as much at a loss to find any disposition of either which can satisfactorily determine the point."

It is to be noted that for over a century the Hylton Case was accepted as establishing the rule that the direct taxes contemplated by the Constitution were only two, namely, a capitation or poll tax and a tax on land. Story, Cooley, Kent, Chase, and other eminent jurists and authors adopted that view, comment being frequently made upon the fact that the tax upon carriages in question in the Hylton Case was imposed by an administration in which were leaders of the constitutional convention, such as Washington, Hamilton, Randolph, Madison, Ellsworth, and Morris, and that two of the members of the Supreme Court who participated in that decision were members of the convention, and that a third was a member of the North Carolina convention which ratified the Constitution; also that Alexander Hamilton was the leading counsel on behalf of the constitutionality of the tax. The opinion of these great leaders in the convention of 1787 (with the exception of Madison) was that only capitation taxes and taxes on land are direct taxes within the meaning of the Constitution. Taxes on personal property or business, however measured, were universally held not to be direct taxes, but excises.

In the income tax cases, however, above cited (Pollock v. Farmers' Loan & Trust Co., 15 S. Ct. 673, 157 U. S. 429, 39 L. Ed. 759; Id., 15 S. Ct. 912, 158 U. S. 601, 39 L. Ed. 1108, decided in 1895), it was held that taxes upon the income from realty or personalty and taxes upon personalty are direct taxes. These cases brought forth a storm of criticism, the beginnings of which were apparent in the opinions of dissenting members of the Supreme Court, and which still manifests itself from time to time in insistent demands for limitations upon the powers of the courts. See Warren's Supreme Court in U. S. History, p. 421 et seq. The practical effect of the decision, so far as it related to income taxes, was eliminated in 1913 by the adoption of the Sixteenth Amendment to the Constitution.

The precise meaning and effect of the income tax decision is stated by Justice White in the case of Knowlton v. Moore, 20 S. Ct. 747, 763, 178 U. S. 41, 82 (44 L. Ed. 969), as follows:

"It is true that in the income tax cases the theory of certain economists, by which direct and indirect taxes are classified with reference to the ability to shift the same, was adverted to. But this disputable theory was not the basis of the conclusion of the court. The constitutional meaning of the word 'direct' was the matter decided. Considering that the constitutional rule of apportionment had its origin in the purpose to prevent taxes on persons solely because of their general ownership of property from being levied by any other rule than that of apportionment, two things were decided by the court: First, that no sound distinction existed between a tax levied on a person solely because of his general ownership of real property, and the same tax imposed solely because of his general ownership of personal property. Secondly, that the tax on the income derived from such property, real or personal, was the legal equivalent of a direct tax on the property from which said in-

come was derived, and hence must be apportioned. These conclusions, however, lend no support to the contention that it was decided that duties, imposts, and excises which are not the essential equivalent of a tax on property generally, real or personal, solely because of its ownership, must be converted into direct taxes, because it is conceived that it would be demonstrated by a close analysis that they could not be shifted from the person upon whom they first fall."

It is clear, from a consideration of the foregoing cases, that to hold that gift taxes are direct taxes would be to go beyond the scope of any decision up to the present time, unless it can be said that a tax upon gifts is a tax imposed solely because of "general ownership of property." In view of the fact that the Income Tax Case was decided upon a rehearing by a vote of five to four, and that the result was due to a change of mind by one of the Justices after the first decision (see Warren's History, p. 422), the scope of that decision ought not to be enlarged by any other tribunal.

Careful study of the practical nature and actual results of the gift tax leads to the conclusion that it is not imposed because of "general ownership of property." It is strenuously argued by counsel for plaintiff that this tax, while denominated in the statute itself a tax upon "transfer by gift," is in reality a tax upon the property which is the subject of the gift, that it is a tax on the right of disposition, without which the property is largely valueless, and that it is a tax upon one of the inherent rights of an individual, namely, the right of free disposition of his property by gift, sale, or otherwise.

For some years prior to the enactment of the gift tax, the laws imposing income taxes and estate taxes had been in existence. The effect of laws imposing the income tax and estate tax in many cases was to bring about a distribution of large estates prior to the deaths of the owners. To the extent to which that was the result, the government failed to obtain revenue. For some years prior to the enactment of the gift tax law the surtaxes on large incomes were heavy, and in many cases a distribution of the taxpayer's property among the members of his family was resorted to, resulting in a lesser tax than would have been the case, had all of the property been concentrated in the hands of a single individual. The income tax paid by several was thereby reduced below the amount which the same property would have been obliged to pay, if its ownership were concentrated in the hands of a single individual. The object

of the gift tax undoubtedly was to make effective the provisions of the income tax and the estate tax in their application to large estates.

In its ordinary and usual phases, to make a gift is to perform an act of generosity. The result is to diminish one's estate or property, and by the same act to increase the estate of another. The motive is usually that of friendship or of love and affection; such an act is the direct antithesis of selfishness. In a material sense, and regarded as a right, it is that of diminishing one's estate. Prior to the passage of the income and estate tax law it is doubtful if there could have been any *direct* selfish motive for a gift; since its enactment the direct motive may be selfish, in the sense that it deprives the government of estate taxes or income taxes it would otherwise be entitled to, the benefit therefrom accruing to one's heirs or devisees, or to the donor himself.

In a real sense, that of which one is deprived by the gift tax is the accomplishment of the foregoing results without paying an excise tax. The question with which we are concerned is whether this alleged right is one of the incidents of property, such as the rights to possess, sell, pledge, keep, or enjoy, or is a qualified right, which may be diminished without depriving the owner of one of the natural rights incident to ownership of property. It is to be observed that the tax imposed in this case is not upon the bonds themselves, nor upon the income of the bonds, nor upon the right to transfer the bonds by sale, nor upon the right to transfer the bonds by gift. If it were any of these, the tax could be imposed only during actual ownership.

[6] But the gift tax is imposed only after the actual transfer. A gift can be consummated only by actual delivery. It is to be noted that the gift tax does not tax the property or any of the incidents of ownership in the hands of the donor, nor the property nor any of its incidents in the hands of the donee. It levies a tax upon the transfer after the title and ownership of the donor has ceased by reason of a gift. Unless this distinction is kept clearly in view, the mind is constantly tempted to revert to the thought that the tax is upon the *right* to transfer by gift. If it were the latter, the tax could only be imposed during actual ownership, because the right to transfer terminates by the transfer itself. This distinction is neither technical nor fanciful. It has been recognized by the courts in other cases. In the case of Billings v. United States, 34 S. Ct. 421, 232 U. S. 261,

58 L. Ed. 596, in which a tax on the use of foreign-built yachts was sustained as an excise, the question arose as to the exact nature of the tax, namely, upon what was it assessed. In that case Chief Justice White said:

"Let it be conceded that the ownership of property includes the right to use; plainly, we think, as use and ownership are distinguished one from the other in the provision, the word 'use' as there employed means more than the mere privilege of using which the owner enjoys, and relates to its primary signification, as defined by Webster: 'The act of employing anything or of applying it to one's service; the state of being so employed or applied.' If the use which arises from the fact of ownership, without more, was what the statute proposed, then it is inconceivable why the difference between use and ownership was marked in the provision and made the basis of the tax which it imposed. While this construction in this case leads to the same conclusion as does that which the court below affixed to the statute— that is, that it taxed the privilege of use, or, in other words, the potentiality of using involved in ownership—inherently there is this fundamental difference between the interpretation we give and that which the lower court adopted, since the privilege of use is purely passive (or subjective), a right which necessarily pertains to ownership, and must exist where there is ownership, as one may not obtain ownership without acquiring the privileges of use which ownership gives. The other, on the contrary, that is, use in the statutory sense, although it arises from ownership, is active (objective); that is, it is the outward and distinct exercise of a right which ownership confers, but which would not necessarily be exerted by the mere fact of ownership."

In the present case, the subjective or passive right to make a gift of property is not taxed. It is the active or objective exercise of the right which is taxed. In the case of In re McKennan's Estate, 126 N. W. 611, 25 S. D. 369, 33 L. R. A. (N. S.) 606, in discussing the nature of a tax upon inheritance, the court referred to this right in the following language:

"Most of the decisions speak of it as a tax on the right to inherit or succeed to property. State v. Ferris, supra [41 N. E. 579, 53 Ohio St. 314, 30 L. R. A. 218]; Drew v. Tifft, 79 Minn. 175, 81 N. W. 838, 47 L. R. A. 525, 79 Am. St. Rep. 446; Gelsthorpe v. Furnell, 20 Mont. 299, 51 P. 267, 39 L. R. A. 170; In re Fox's Estate, 154 Mich. 5, 117 N. W. 558; State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732, 7 A. & E. Ann. Cas. 1056. It seems clear to us that this is incorrect, that it is not a tax upon the right to inherit or to succeed, nor upon the right to transmit, but a tax upon the exercise of such right—upon the transmission of property. To illustrate: Every person owning property has the inherent right to sell such property, and every other person has the inherent right to purchase same. These rights are subject to regulation, but they could not be taxed unless considered as property, and, if property, must be taxed as such. Yet the federal government has in quite recent years, by its act to raise revenue for the Spanish War, imposed a tax, not on land, not on right to sell or purchase land, but upon the transfer of land, upon the exercise of the right to sell and buy. Considered as a tax either upon the land or upon the right to buy, sell, or own, it would clearly have been unconstitutional, not being properly apportioned among the states."

In the present case, it is undoubtedly true that, if the tax were upon the bonds, or upon the right to transfer the bonds by sale or gift, it would be a tax upon personal property, and would be unconstitutional. It seems clear, however, that the tax in question is not a tax upon the bonds, nor upon any of the incidents of property arising from their ownership. All of the incidents of ownership have ceased before the right to tax attaches. It is clearly a tax upon the transmission or transfer itself, not on property, and under all of the authorities up to the present time such taxes have been determined to be not direct, but excise taxes, and hence are not within the constitutional inhibition.

[7] It is next contended by plaintiff that the exaction of a gift tax as imposed in this case deprives him of his property without due process of law, and constitutes a taking of his property without just compensation, in violation of the Fifth Amendment to the Constitution, and that this is especially true as to gifts made prior to June 2, 1924, when the law became effective.

[8] It has been held repeatedly that the Fifth Amendment does not operate to limit or destroy the broad powers conferred upon Congress to impose taxes. See Barclay & Co. v. Edwards, 45 S. Ct. 135, 348, 267 U. S. 442, 450, 69 L. Ed. 703. In the case of Brushaber v. Union Pacific R. R. Co., 36 S. Ct. 236, 244, 240 U. S. 1, 24 (60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713), it was said:

"So far as the due process clause of the Fifth Amendment is relied upon, it suffices

to say that there is no basis for such reliance since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring upon the one hand a taxing power and taking the same power away on the other by the limitations of the due process clause. Treat v. White [21 S. Ct. 611, 181 U. S. 264, 45 L. Ed. 853]; Patton v. Brady [22 S. Ct. 493, 184 U. S. 608, 46 L. Ed. 713]; McCray v. United States [24 S. Ct. 769, 195 U. S. 27, 61, 49 L. Ed. 78, 1 Ann. Cas. 561]; Flint v. Stone Tracy Co., supra; Billings v. United States [34 S. Ct. 421], 232 U. S. 261, 282 [58 L. Ed. 596]."

The conclusion having been reached that the tax here imposed is within the taxing powers conferred upon Congress, the question here presented is whether, as to gifts made prior to June 2, 1924 (amounting to $843,696), plaintiff's rights under the Fifth Amendment have been violated by the imposition of the tax. Plaintiff contends that at the time of making these gifts he had a vested right, under both the federal and state Constitutions, to give away his property without incurring liability for taxes by reason of so doing, and that the fastening of a lien upon his remaining property to secure payment of the tax is in violation of vested rights.

[9] It is to be noted that the constitutional provisions conferring upon Congress the power to tax contain no intimation that a tax may not be retroactive. The powers of Congress to enact retroactive legislation (except only ex post facto laws which are punitive in character) have long been recognized. Retroactive tax laws frequently have been questioned in the Supreme Court, but have been uniformly sustained. See Brushaber v. Union Pacific R. R. Co., 36 S. Ct. 236, 240 U. S. 1, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, in which the income tax law of 1913 (38 Stat. 114) was assailed under the due process clause of the Fifth Amendment, because retroactive; Wagner v. Baltimore, 36 S. Ct. 66, 239 U. S. 207, 60 L. Ed. 230, in which a special assessment was levied upon property for benefits previously accrued; Seattle v. Kelleher, 25 S. Ct. 44, 195 U. S. 351, 49 L. Ed. 232, a special assessment levied upon property after the work was completed; Billings v. United States, 34 S. Ct. 421, 232 U. S. 261, 58 L. Ed. 596, an excise tax imposed upon the use of foreign-built yachts before the passage of the statute; Stockdale v. Insurance Co., 20 Wall. 323, 22 L. Ed. 348, in which the income

tax law of 1867 was objected to because retroactive; Flint v. Stone Tracy Co., 31 S. Ct. 342, 220 U. S. 111, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, in which the excise tax of 1909 on corporations was attacked for the same reason. See, also, Locke v. New Orleans, 4 Wall. 172, 18 L. Ed. 334; Railroad Co. v. Rose, 95 U. S. 78, 24 L. Ed. 376; Hecht v. Malley, 44 S. Ct. 462, 265 U. S. 144, 68 L. Ed. 949; and Cooley on Taxation (3d Ed.) 492.

Even though it be conceded that the essential and comprehensive powers of Congress to levy taxes are subject to limitation by the judiciary, when found to be destructive of vested and fundamental rights, and that there may be such an abuse of those powers that the remedy should be applied by the courts, and not by the electors at the polls, such considerations are not controlling in this case. A careful analysis of the nature and purpose of the tax and the reasons for imposing it leads to the conclusion that its retroactive provisions may reasonably be said to be the exercise of sound legislative judgment.

The gift tax is often erroneously referred to as a distinct tax. It is merely corollary to the estate tax imposed in part 1 of title 3 of the Revenue Act of 1924; the gift tax being imposed by part 2 of the same title. Because it was regarded by Congress as being essential to preserve the efficacy of the estate tax, it was sometimes referred to as the "mother" of that tax. It is to be noted that the rates imposed and the exemptions granted are in substance the same. It is apparent from the congressional debates that, while it was imposed for revenue purposes, its substantial object was to prevent the widespread evasion of the estate tax and the high surtaxes of the income tax law, resulting from the fact that persons of large wealth divided and administered their estates by direct gifts or by the creation of trusts. It apparently was well understood that, though some direct revenue would be obtained, the chief purpose to be accomplished was substantial increase in revenue from the estate tax. See 65 Cong. Record, 3119 et seq., 3170 et seq., and 8094 et seq.

The revenues of the government from the estate and income taxes had been seriously impaired, and the rebuttable presumption that gifts made within two years prior to death were made in contemplation thereof, under section 301(c) of the estate tax law (43 Stat. 303 [Comp. St. Supp. 1925, § 6336⅘b]) was largely ineffective for want of evidence available to the revenue officials.

The advisability of the gift tax was debated in Congress and discussed in the public press throughout the first six months of 1924. It was plain that, in anticipation of the passage of this law, many persons would attempt evasion by making gifts prior to the date when it would become effective. It seems clear that to make the law retroactive during the period the purpose and nature of the tax was a matter of common knowledge—was the exercise of congressional discretion, with which the courts have no concern. It was evidently considered by Congress that it was necessary to make provision against further evasion of the estate tax law, the constitutionality of which had been sustained in Knowlton v. Moore, 20 S. Ct. 747, 178 U. S. 41, 44 L. Ed. 969.

In this view the retroactive provisions are well within the rule declared by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 421 (4 L. Ed. 579), viz.:

"Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

See, also, Flint v. Stone Tracy Co., 31 S. Ct. 342, 220 U. S. 107, 175, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Brown v. Maryland, 12 Wheat. 419, 446, 6 L. Ed. 678; South Carolina v. United States, 26 S. Ct. 110, 199 U. S. 437, 448, 50 L. Ed. 261, 4 Ann. Cas. 737; Travelers' Insurance Co. v. Connecticut, 22 S. Ct. 673, 185 U. S. 364, 46 L. Ed. 949.

It is the conclusion of the court that the retroactive provisions of the law under consideration do not constitute an abuse of the powers of Congress, or a violation of the rights of plaintiff under the Fifth Amendment.

[10] It is also the contention of plaintiff that the gift tax as levied in this case is a tax upon the borrowing powers of the states and their municipalities, and tends to impair and destroy the exercise of their governmental powers and functions, for the reason that the property given consisted entirely of state and municipal securities.

It is argued that, while the tax is denominated a tax "upon the transfer by gift," it is in substance and reality a tax upon property—in this case, upon the bonds themselves—because it is a tax upon one of the valuable incidents of their ownership, viz. the right of disposition by gift. It is said that, if the United States may by this tax impair the inherent incidental right of free disposition, it may impair or destroy the borrowing power of the states or their municipalities.

If the gift tax were a direct tax upon property—in this case, upon the bonds themselves—plaintiff's contentions could not be denied. It has been repeatedly held that taxes imposed by the states upon United States bonds, notes, or government agencies (see McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Weston v. Charleston, 2 Pet. 449, 7 L. Ed. 481; Bank v. Supervisors, 7 Wall. 26, 19 L. Ed. 60), or by the federal government upon state bonds, notes, or government agencies (see Fifield v. Close, 15 Mich. 505; Collector v. Day, 11 Wall. 113, 20 L. Ed. 122; United States v. Railroad Co., 17 Wall. 322, 21 L. Ed. 597; Mercantile Bank v. New York, 7 S. Ct. 826, 121 U. S. 138, 30 L. Ed. 895; Pollock v. Farmers' Loan & Trust Co., 15 S. Ct. 673, 157 U. S. 429, 39 L. Ed. 759), constitute an unlawful interference with governmental functions, and are therefore invalid. However, as has been indicated in this opinion, this is not a tax upon the bonds, the use thereof, the income therefrom, the right to sell, nor the right to transfer. It is an excise tax upon the transfer itself, after the gift is complete. No restrictions or conditions are imposed upon the transfer of the bonds. All property rights have finally terminated before the tax is imposed.

The question, then, is whether this excise tax results in placing an unlawful burden upon the state or municipality. To urge that it does is to pursue shadow, and not substance. If an express condition were to be attached to such bonds at the time of issuance, to the effect that no purchaser could give away to exceed $50,000 in any one year, other than for public or charitable purposes, except upon payment of a penalty of 1 per cent. on the amount given not exceeding $50,000, 2 per cent. on the next $50,000, and so on, is it not exceedingly improbable that the marketability and market value would be affected in the slightest degree, and, if affected at all, is it not at least equally probable that the tendency would be to increase rather than lessen the demand for the bonds?

To say that such bonds have thereby been deprived of an element which increases their value is to indulge the imagination to an unwarrantable extent. All elements of use of real value to the bondholder are undisturbed. Would not Congress have the right to say, in view of the history of evasion connected with the estate tax, that gifts of more than $50,000 in any one year shall be conclusively pre-

sumed to be made with intent to evade the estate tax, and to impose an excise tax thereon? The owner is deprived of no valuable right. He can still sell, keep, pledge, and collect interest and principal when due, without being subject to the excise tax. It is only when he gives the bonds away under such circumstances that Congress, in the exercise of its judgment and after providing for exemptions deemed by it to be adequate, determines that the gift is a mere evasion of the estate taxes and imposes an excise tax.

The Supreme Court, in demonstrating the fallacy of a similar argument, used the following language in the case of Flint v. Stone Tracy Co., 31 S. Ct. 342, 353, 220 U. S. 107, 162 (55 L. Ed. 389, Ann. Cas. 1912B, 1312):

"It is further contended that some of the corporations, notably insurance companies, have large investments in municipal bonds and other nontaxable securities, and in real estate and personal property not used in the business; that therefore the selection of the measure of the income from all sources is void, because it reaches property which is not the subject of taxation—upon the authority of the Pollock Case, supra. But this argument confuses the measure of the tax upon the privilege, with direct taxation of the estate or thing taxed."

In the case of Greiner v. Lewellyn, 42 S. Ct. 324, 258 U. S. 384, 66 L. Ed. 676, it was held against the same objection that Congress has the power to require that state and municipal bonds held by a decedent be included, for the purpose of determining the net value on which the estate tax should be imposed. See, also, Plummer v. Coler, 20 S. Ct. 829, 178 U. S. 115, 44 L. Ed. 998.

[11] It is urged that, if a tax may be lawfully imposed upon a transfer of bonds by gift, it must also be true that a tax upon a transfer by sale will be upheld. This does not follow. A transfer by sale is always for a valuable consideration. A tax upon such a transfer could never be a corollary to an estate tax, would inevitably impair the intrinsic value of the bonds, and would to some extent cast a burden upon the state or municipality issuing the bonds. The fact that a tax by the state or federal government may have some effect upon the taxing power of the other does not, however, necessarily result in invalidating the law imposing the tax. The rule as stated in the case of Metcalf & Eddy v. Mitchell, 46 S. Ct. 172, 69 L. Ed. —— (decided by the Supreme Court January 11, 1926), is as follows:

"But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction, which permits both to function with the minimum of interference each with the other, and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax * * * or the appropriate exercise of the functions of the government affected by it."

It seems probable that the practical result of denying to the federal government the right to impose the gift tax as a corollary to the estate tax would be to render both present and possible future estate tax laws impossible of effective enforcement. Many large estates may and probably would, through successive generations, be placed in the form of never-dying gift trusts. This would necessarily seriously affect a recognized taxing power of the federal government.

It must be held that the excise tax here in question does not impair in any substantial manner the exercise of the governmental powers of the states.

[12] It is further contended by plaintiff that as to gifts made prior to the date the gift tax law became effective the tax must be construed as a direct tax, and that as applied to the facts of this case the Treasury Department has levied a tax which is beyond the taxing powers of Congress. This objection has to some extent been referred to in other parts of this opinion. The soundness of the contention that plaintiff's vested rights to dispose of property by gifts have been infringed may well be questioned. To give assent to the doctrine that any citizen has a vested right which may be asserted against an otherwise lawful exercise of the taxing powers of the government is to render impotent all power to tax, for in a broad sense all taxes interfere with vested rights. As hereinbefore indicated, Congress has frequently imposed taxes for a period antedating the passage of the taxing act, and such laws have been sustained.

[13] Neither does the fact that the gift tax law creates a lien upon property change the character of the tax from an excise to a direct tax. The creation of such lien is held to be merely an appropriate regulation to secure collection of the tax. See Scholey v. Rew, 23 Wall. 331, 347, 23 L. Ed. 99. To accept the argument that as to gifts previously made the tax is a direct one, because it is involuntary and cannot be shifted from the donor, to be ultimately paid by some one else, is to approve the economic definitions

of direct taxes. The Supreme Court has expressly repudiated these definitions. See Nicol v. Ames, 19 S. Ct. 522, 173 U. S. 509, 515, 43 L. Ed. 786; Knowlton v. Moore, 20 S. Ct. 747, 178 U. S. 41, 82, 44 L. Ed. 969; New York Trust Co. v. Eisner, 41 S. Ct. 506, 256 U. S. 345, 349, 65 L. Ed. 963, 16 A. L. R. 660. The conclusion must therefore be that an excise tax does not, merely because made retroactive, and therefore applicable to past transactions, become a direct tax.

[14] It is also asserted by plaintiff that the gift tax is an encroachment upon the powers reserved to the states or to the people by the Tenth Amendment to the Constitution. It is said that the right to regulate the disposition of property is one of the powers so reserved, and that the gift tax is intended to prevent owners from exercising the right of disposition. There can be no question that the power to regulate the transfer of title to property and the succession of property is vested in the states, and not in Congress. The contention made, however, rests upon the assumption that this tax is upon the right to transfer by gift. As has been previously indicated, the real subject of taxation under the gift tax law is the transfer itself. If the principle here contended for by plaintiff is sound, stamp taxes upon deeds could not be sustained. The fact is that no burden is cast by the gift tax law upon the power of the states to regulate gifts; but, when the gift has become a completed transaction, the right of the federal government to impose an excise tax attaches.

[15] However strong may be the conviction of the courts that estate taxes are unjust in principle, or that the power of the federal government to impose such taxes should be exercised only in times of war, or that the imposition of a gift tax in the form of an excise as here imposed is unwise, either as to rates, exemptions, or retroactive provisions, it must not be overlooked that judicial interference with the discretion of Congress in the exercise of the sovereign power of taxation may paralyze the federal government in moments of national peril, and that the correction of such errors in judgment may with greater safety be left to the ballot. It is only when the violation of constitutional requirements is clear and beyond reasonable doubt that the courts should act.

An order will be entered, granting the motion to dismiss.