## Case No. 3,969.

### DOLL v. EVANS et al.

[29 Leg. Int. 116;[1] 11 Am. Law Reg. (N. S.) 315; 15 Int. Rev. Rec. 143; 9 Phila. 364; 4 Leg. Gaz. 113.]

Circuit Court, E. D. Pennsylvania. April 1, 1872.

INTERNAL REVENUE—INCOME TAX — FRAUDULENT RETURN—REASSESSMENT AND PENALTY — CONSTITUTIONAL LAW.

1. An assessor of internal revenue has power to reassess the income tax of a citizen who has already paid the tax first assessed against him.

2. The imposition of an addition of one hundred per centum as a penalty for the return of a false or fraudulent valuation is constitutional.

[This was an action by George Doll against George C. Evans, collector of internal revenue.] Demurrer to plea.

N. H. Sharpless, for demurrer.

Aubrey H. Smith, Dist. Atty., contra.

McKENNAN, Circuit Judge. This demurrer presents only two questions which it is necessary to consider: 1. Has an assessor of internal revenue power to reassess the income tax of a citizen, who has paid the tax first assessed against him? And, 2. Is the act of congress, which imposes an addition of one hundred per centum to the tax, as a penalty for the "return of a false or fraudu-

---

[1] [Reprinted from 29 Leg. Int. 116, by permission.]

lent list or valuation," constitutional? The defendants' plea avers, that the plaintiff made a return of his income for the year 1868, to the assessor of the third collection district of Pennsylvania; that he was thereupon assessed with an income tax of $95.60, which was placed by the assessor on the annual list; that this list was delivered to the collector, to whom the plaintiff paid the tax so charged against him; that afterwards and within fifteen months after the delivery of said list to the collector, to wit, on the 21st October, 1869, the assessor duly summoned and required the plaintiff to appear before him at his office in Philadelphia, on the 25th October, 1869, to produce all books of accounts, containing entries of profits from business, rents, &c., relating to his income and business from January 1st, 1868, to December 31st, 1868, which he had in his power, custody, or care, and to give evidence according to his knowledge respecting his liability to an excise or tax, under the internal revenue laws; that the plaintiff did not appear in pursuance of said notice, whereupon the assessor proceeded to make, according to the best information he could obtain, and to his own view and information, a list or return of the income, gains and profits of the plaintiff for the year 1868, and did assess thereupon and charge to the plaintiff the sum of $482.64, in addition to the $95.60 before assessed, as his income tax, and did further add thereto the sum of $482.84, being one hundred per centum, as and for a penalty for having made the false and fraudulent list, statement, or return as aforesaid; that afterwards to wit, on the 20th day of April, 1870, the said assessor certified and delivered to the defendant, George C. Evans, as collector, a certain list, called the "monthly list," for the month of March, 1870, on which was charged to the plaintiff the sum of $965.68, being the additional amount of his income tax for the year 1868, so reassessed, and the penalty aforesaid; that the said collector duly notified the plaintiff of the said charge, and demanded payment thereof on or before the last day of April, 1870; that the plaintiff did not pay the same; and that the defendant afterwards, on the 9th day of May, 1870, proceeded to collect the same by distraint of the goods and chattels mentioned in the declaration.

The demurrer admits the truth of these facts, and the sufficiency of the plea, therefore, depends upon the legal authority of the assessor to reassess the plaintiff's income tax, and to add one hundred per centum thereto. If the law conferred this power upon the assessor, the list made out, certified, and delivered by him to the collector was a sufficient warrant to the latter to demand and collect the tax charged therein, and constituted a complete justification of the seizure of the plaintiff's goods. The collector is responsible only for the possession of authority by the assessor to make the reassessment, not

for his conformity to the directory provisions of the law, as to the mode of its exercise. This question is to be solved by the construction of the internal revenue act of June 30, 1864 [13 Stat. 229]. The 20th section of that act authorizes an additional or reassessment of income tax, within fifteen months after the delivery of the annual list to the collector, in all cases in which it is incomplete, or imperfect, in consequence of any omission, understatement, undervaluation, or false or fraudulent return made by any person liable to said tax. The terms of this section are certainly broad enough to embrace the case stated in the plea, but it is urged that it was not intended to apply to the case of persons who have paid the amount of the original assessment.

The only limitation of the power of the assessor relates to the period within which it is to be exercised, and the cases to which it is to be applied. Within the prescribed period and in the specified cases, it is coextensive with the power vested in him in reference to the original assessment. The object of the law is to confer upon him ample corrective cognisance of all omissions, understatements, undervaluations, falsehood or fraud in income returns, upon which the tax has been assessed and charged in the collector's list, within fifteen months, to the end that every taxpayer may be subjected to his proper proportion of a public burden. To make the payment of less than this effective as a discharge from liability for a further sum, which ought rightfully to have been paid, and which has been avoided by the fraudulent act of the person subject to taxation, would be to circumscribe the scope of the law, against its obvious intent. An express restriction alone could have this effect, and that is not to be found in the act. But it is evident from the tenor of the act, that it contemplates the exercise of the power of reassessment after the payment of the tax first assessed. It is made the duty of the assessor to require a return of income on or before a fixed day in each year, and to make out, certify, and deliver to the collector a list of the taxes charged therein. This is called the "annual list," and after its delivery to the collector, it is in nowise subject to the control of the assessor. It is then the duty of the collector to proceed at once to the collection of the tax charged on this list, and to enforce prompt payment of it. The whole process of assessment and collection is intended to be completed within the year in which the assessment is made. Now, at any time within fifteen months after the annual list is delivered to the collector a reassessment may be made, and only the additional tax thus ascertained is to be charged and put on another list called the "monthly list." By this extension of the period for reassessment beyond the time when the original tax must be paid, and the provisions for the collection of the additional tax only upon the

monthly list, it is apparent that the assessor's power of reassessment is to be exercised independently of the fact of the payment or non-payment of the tax charged in the annual list. It follows, therefore, that the additional tax assessed upon the plaintiff was authorized by the act of congress. And the return made by him having been found to be false, it was the imperative duty of the assessor to add one hundred per centum, as directed by the 14th section of the act.

The remaining cause of demurrer is, that the act of congress, in so far as it imposes a penalty for a false or fraudulent return, is unconstitutional. The act does not invest the assessor with power to "sentence" anybody; it does not even allow him any discretion as to the penal increase of the tax. It authorizes him to inquire whether the return is false or fraudulent, and if he so finds, requires him to add one hundred per centum to the tax. This is not conferring judicial power upon him, within the meaning of the constitution. It is simply empowering him to ascertain a fact, according to which he is to adjust the amount of the tax imposed by law. That this function is judicial in its nature there is no doubt, but so are many like functions committed to public officers, as essential to the performance of their official duties. They are within the competency of congress to confer, as necessarily incident to the execution of its expressly granted powers.

The acts of congress furnish many examples of this. They are to be found especially in the laws relating to the collection of customs; and the validity of such legislation has never been denied. A single illustration will show this. By act of congress collectors of customs are authorized to assess an additional duty of twenty per cent. upon goods valued by the appraisers at ten per cent. or more in excess of the value declared by the importer in the invoice and entry. The validity of an appraisement made and an additional duty imposed under this act, was before the supreme court in Bartlett v. Kane, 16 How. [57 U. S.] 269. Judge Campbell, delivering the opinion of the court, said: "The plaintiff contends that the rule of appraisement by which the dutiable value of the goods was raised and the importer was subjected to the additional duty prescribed by the 8th section of the act of 1846 [9 Stat. 43] was illegal and void, and the duties thus claimed and paid under said appraisement were illegally exacted. * * * The appraisers are appointed 'with powers, by all reasonable ways and means, to ascertain, estimate, and appraise the true market value and wholesale price' of the importation. The exercise of these powers involves knowledge, judgment, and discretion." And again: "An examination of the revenue laws upon the subject of levying additional duties, in consequence of the fact of an undervaluation by the importer, shows that they were exacted

as discouragements to fraud, and to prevent efforts by importers to escape the legal rates of duty. * * * They are the compensation for a violated law, and are designed to operate as checks and restraints upon fraud and injustice." And the legality of the appraisement and of the imposition of the penal duty was sustained. That the powers thus exercised by the appraisers are judicial in their nature is beyond question, for so the court distinctly treats them. They decided the fact that the importer's invoice was false, and thereupon the collector imposed upon him a penal duty of twenty per cent. And yet the court upheld the exercise of these powers by the appraisers and collector. without intimating a doubt of the validity of the law conferring them. Their conclusion is a most expressive affirmance of the validity of such legislation. So also, in the present case, the investiture of the assessor with analogous functions must be sustained, as auxiliary to the execution of the same constitutional grant of power to congress.

Judgment upon the demurrer will, therefore, be entered for the defendants.