## Appeal of F. W. LUKINS.

Docket No. 2544.     Submitted June 9, 1925.     Decided December 8, 1925.

1. The taxpayer received $30,000 and applied the said sum to his own use in the year 1917. He failed to make any disclosure of the fact of such receipt in connection with his income-tax return. The Commissioner determined that the amount so received was income and that the return filed for the said year was wilfully false and fraudulent. In the absence of credible evidence either as to the nature of the transaction or as to the intent of the taxpayer in filing his return, the determination of the Commissioner as to tax and penalty is sustained.

2. The taxpayer omitted from his return of income for the year 1918 certain amounts, aggregating $9,000, under the mistaken belief that the amounts so received were not income. The Commissioner added the amounts to income but did not assert a penalty. *Held*, on the evidence, that the taxpayer did not file a return for the year 1918 which was wilfully false and fraudulent.

*J. J. Miller* and *H. A. Mihills, C. P. A.'s*, for the taxpayer.
*C. H. Curl, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1917 in the amount of $5,977.53, with a penalty under section 3176, Rev. Stats., in the amount of $7,713.20, a total for 1917 of $13,690.73; and a deficiency in income tax for the year 1918 in the amount of $3,957.12. Substantially the entire additional tax and penalty asserted by the Commissioner are in controversy.

### FINDINGS OF FACT.

The taxpayer is a resident of Kansas City, Mo., and, during the taxable years here in question, was general manager of the Waverly Coal Co. and the Farmers Fuel Co. of that city.

During the taxable year 1917 the taxpayer received $15,000 from J. D. Guyton and $15,000 from W. R. Harrington. Neither of these amounts was reported in the income-tax return of the taxpayer. During the same year the taxpayer expended in interest $1,122.51 and made contributions to exempt charitable organizations in the amount of $487.

As respects the two amounts of $15,000 for the year 1917, the taxpayer failed to make any disclosure thereof on his income-tax return and failed to subject the same voluntarily to tax, but wilfully and knowingly refrained from making such disclosure or from setting forth in any manner the nature of the transactions giving rise to the receipt thereof, and wilfully and knowingly filed a false and fraudulent return for the said year. As respects four amounts aggregating $9,000, omitted by the taxpayer from his return for the year 1918, the taxpayer failed to make any disclosure upon his income-tax returns and failed to subject the same voluntarily to tax, under a mistaken conclusion of fact and law that the said amounts did not constitute gross income in and for the said year, and he did not wilfully and knowingly file a false and fraudulent return in respect thereof for the said year.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

### OPINION.

JAMES: The taxpayer is 68 years of age. He has been in the coal business since 1881, starting in that business in Streator, Ill. During the years 1917 to 1920, inclusive, he was president of the South-

west Interstate Coal Operators Association, and since 1917 has been a director in the National Coal Association.

During the year 1917 the taxpayer received from J. D. Guyton and W. R. Harrington the sum of $30,000, $15,000 from each, and reported neither of these amounts in his income-tax return for that year. The Commissioner discovered the amount in connection with the audit of the returns of Guyton and Harrington, and added it to taxable income in the determination of the deficiency here in question. The taxpayer testified as to the transaction: " I borrowed this money from Mr. Guyton and Mr. Harrington and gave them my notes for it." He stated on direct examination that the payment was not compensation, was not for services rendered, did not involve the sale of any property owned by him or the rent of any property; was not the forgiveness of any debt, the income of any joint venture, any interest, any dividends, or any payments indirectly from the Waverly Coal Co., in which he was interested; and he testified by way of final conclusion that it did not represent any item of income from Guyton and Harrington. He repeated again, " It was a straight loan from them. I knew them; knew they had money and I needed some money and I went to them and borrowed it. I gave them my notes." He stated further that he had not repaid the loans; that he did not remember that any demand had been made upon him for payment; that he had never paid any interest upon them; and that he did not remember whether any demand for interest had been made. He also testified that he had deposited the $30,000 so received in a bank in Streator, Ill., of which his brother was president. He was asked on direct examination what was done with the amount so deposited, and replied, " Well, that is a matter that seems to me that is not germane to this proposition." He testified it was not turned over to anyone else.

On cross-examination the taxpayer was asked when he got the money from Guyton and Harrington, and stated that he could not remember. He did not know how long he had known Harrington. He was not certain whether he had ever done business with Harrington but thought he had sold him some coal; that he had never before borrowed money from either Guyton or Harrington; that as to the notes, which he alleged had been given, he could not give the dates and had " mislaid my memorandum about that." He stated that the notes bore interest at the rate of 6 per cent, " as I remember." When asked if he had ever talked with Guyton and Harrington about the matter, he said that he had, but, when asked to relate the conversation, he replied, " Oh, that was some time ago; I can't remember what was said." While he had testified on direct examination that he could not have repaid the loans or paid the interest after 1917, he admitted on cross-examination that he had

himself returned a taxable income for 1918 of $23,056. When asked why he had selected a bank in Streator, Ill., for the deposit of the funds at a distance of some 400 miles from Kansas City, he replied, " I suppose I had some good reason for it at the time; I do not remember just what that was now." When asked if he had put up security on the notes, he replied, " I put up some security; I have forgotten just what it was now. I know there was some put up." When asked if he had made any effort to procure the notes or evidence of their existence, for the purpose of the hearing before the Board, he said, " I did not think that—never thought of that; it never occurred to me." However, when pressed to explain why he had secured a 15-day extension of time for the hearing in order to get affidavits from Guyton and Harrington to show that notes were given and that the transaction was a loan, he admitted that he had secured the extension for that purpose and that his efforts to secure evidence from Guyton and Harrington had failed because of their refusal either to testify or produce the alleged notes in question. The record shows that there was no subpoena issued to either Guyton or Harrington and no effort on the part of the taxpayer to compel the production of evidence of the character indicated.

The cross-examination then veered to the business of Guyton and Harrington, and from that point reads, by questions and answers, as follows:

Q. What was the business of Guyton and Harrington at that time?

A. They were in the mule and horse business.

Q. Who were they selling their horses and mules to, Mr. Lukins?

A. Anybody that wanted them; they had many of them put up on the market.

Q. Were they not selling them to the Army, Mr. Lukins?

A. I think they had a contract.

Q. You know they had contracts with the Government to sell mules and horses.

A. Well there are——

Q. You know what Government don't you?

A. Well there are a good many governments.

Q. I am trying to get an answer to my question. Isn't it a fact that they had a contract with the British Government?

A. Yes, I think they were.

Q. Yes. Did you have anything to do with that?

A. No.

Q. No? You did not?

A. No.

Q. Were you acquainted with the British officers in that deal?

A. I met some of the officers.

Q. You met them.

A. Yes, sir.

Q. Did you have any business transactions with them?

A. Well I don't remember just what business transactions you mean.

104881—27——17

Q. Did you have any business transactions with these British officers?

A. Not with all of them——

Q. Not with all of them. You did with a few.

A. I knew some of them.

Q. And you had business transactions with one of them did you not?

A. One of the officers I had business with; Colonel Drage. He was president of our company at that time. He was the only one that I had business transactions with. The business transaction was only the company's business. That is all.

Q. Mr. Drage that was associated with you was one of the British officers?

A. He was a British officer.

Q. He was a British officer?

A. Yes, sir.

Q. He had something to do with the buying of mules from Guyton and Harrington?

A. Well he was—he had charge of a remount station.

Q. And this $30,000 was used in that transaction?

A. What transaction?

Q. The transaction we are talking about with Mr. Drage?

A. No, Drage hasn't anything to do with that whatever.

Q. Did not have anything to do with the $30,000; did not have anything to do with it?

A. No.

Q. And the $30,000 you got then you kept yourself?

A. Yes, sir.

Q. For your own personal business?

A. Yes, sir.

Q. That is all, Mr. Lukins.

The taxpayer appeals to the Board from the assertion by the Commissioner of a tax upon a transaction involving the receipt of $30,000, which he admitted that he had for his own use. His testimony that the transaction involved the loan of $30,000 is incredible and unworthy of belief. The determination of the Commissioner in respect of the gain of $30,000 and of the fraudulent concealment thereof, must be approved.

As to the year 1918, the taxpayer concedes that he received $9,000 " on account " of the indebtedness of the Waverly Coal Co. to him, which consisted of a mixed aggregate of advances, interest, bonus, and salary accounts. Money received on account of any of these, except advances, would in any event be income. The taxpayer contends that the $9,000 must first be applied to principal. There is no evidence before the Board as to the amounts of advances, separated from interest, bonuses, and salary, and, under the circumstances, we are compelled to affirm the Commissioner's determination for the year 1918, even if the taxpayer were, as a matter of law, entitled to the allocation he seeks.

The Commissioner asked the Board to find a deficiency in the form of a penalty for wilfully and fraudulently failing to return the above $9,000 of income in the year 1918. We are satisfied that

the taxpayer wilfully failed to return it or to disclose its source, but we are not convinced that he was guilty of fraudulent concealment, so as to warrant the assessment of the penalty. The burden of proof in this respect was upon the Commissioner, he not having asserted the penalty as part of the deficiency, and we find nothing in the record, as respects 1918, which clearly and unmistakably points to fraudulent intent.